# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| In the Matter of the Detention of: | No. 58872-2-II |
| T.L., | UNPUBLISHED OPINION |
| Appellant. | |

CHE, J. — After arguing with his mother, ML, throughout the day, TL opened a knife and pointed it at ML inside her home. ML fled her home and called the police. After finding TL incompetent to stand trial, the superior court dismissed TL's criminal charge of second degree assault and ordered he undergo an evaluation at Western State Hospital (WSH) for evaluation for civil commitment. WSH filed a petition for up to 180 days of involuntary treatment alleging that TL is gravely disabled as a result of a behavioral health disorder and that TL committed acts constituting a violent felony and presents a substantial likelihood of repeating similar acts. A jury found that TL met the criteria for commitment on both grounds.

TL appeals arguing that there was insufficient evidence to support the jury's finding that TL committed acts constituting a violent felony. We disagree and affirm.

FACTS

While TL was living with ML, he would be fine one minute and fly into a rage the next. ML often observed TL talking to himself or to people who were not there. ML explained that nearly every wall in her home has holes from TL punching them and recalled that he broke a

mirror and television. One day, TL became upset with ML, threw food at her, grabbed her arms causing bruising, and gave her a black eye.

About six weeks later, TL and ML were arguing about purchasing TL alcohol. TL became highly agitated, grabbed ML's phone and car keys from her, and walked away leaving her stranded. A bystander called the police who drove her to her neighbor's home to get her spare keys. When ML returned to her home, her neighbor informed her she had ML's phone. ML asked if her neighbor's boyfriend, John, would go into her house with her in case TL was still upset. ML explained that she figured if TL saw someone else with ML, TL would "back off." 2 Rep. of Proc. (Sept. 27, 2023) (2 RP) at 93.

When ML and John walked into ML's house, TL came around the corner towards them. ML heard TL say either "gun" or "John's got a gun," and saw TL open a knife. 2 RP at 94. TL was about eight feet away from ML when he pulled out the knife, and ML felt "scared" and "shaky." 2 RP at 104. ML immediately turned around and shoved John out of the house and closed the door behind them. ML did not recall whether TL said anything else because she was "freaked out and upset." 2 RP at 94. ML called the police and told them that TL was at her house. Around 50 police officers responded. After a three-hour standoff, the officers deployed a cannister and detained TL as he exited the house.

The State charged TL with second degree assault. The trial court entered an order dismissing the second degree assault charge and admitting TL to WSH for evaluation. WSH petitioned for 180 days of involuntary treatment on the basis that TL was gravely disabled and that a violent felony offense had been dismissed due to his incompetence as a result of a behavioral health disorder which presented a substantial likelihood of him repeating similar acts.

2

At trial, the jury was instructed on the definition of assault:

> An assault is an act, with unlawful force, done with intent to inflict bodily injury upon another, tending but failing to accomplish it and accompanied with the apparent present ability to inflict the bodily injury if not prevented. It is not necessary that bodily injury be inflicted.
>
> An assault is also an act, with unlawful force, done with the intent to create in another apprehension and fear of bodily injury, and which in fact creates in another a reasonable apprehension and imminent fear of bodily injury even though the actor did not actually intend to inflict bodily injury.

Clerk's Papers (CP) at 102.

The jury returned verdicts finding that TL had a behavioral health disorder, that he is gravely disabled as a result of that disorder, that he committed acts constituting second degree assault and the criminal charge was dismissed due to a finding of incompetence, and that he presented a substantial likelihood of repeating similar acts as a result of his behavioral health disorder. In accordance with the jury verdicts, the trial court entered a special finding that the acts committed by TL constituted a violent offense under RCW 9.94A.030. The trial court ordered TL be committed for 180 days of involuntary treatment at WSH.

TL appeals.

ANALYSIS

TL argues that the trial court erred by entering an order committing him to involuntary treatment for 180 days because the evidence was insufficient to support the finding that he had committed acts constituting second degree assault. We disagree.

"The Petitioners' burden of proof in a 180-day involuntary commitment proceeding is by clear, cogent, and convincing evidence." *In re Det. of A.M.*, 17 Wn. App. 2d 321, 330, 487 P.3d 531 (2021). Clear, cogent, and convincing evidence is satisfied when "'the findings [are]

supported by substantial evidence in light of the highly probable test.'" *Id.* (alteration in original) (internal quotation marks omitted) (quoting *In re Det. of LaBelle*, 107 Wn.2d 196, 209, 728 P.2d 138 (1986)). The highly probable test requires that the ultimate fact in issue be shown by evidence to be "highly probable." *Id.* Substantial evidence is such that a fair minded person could be persuaded that the premise is true. *Id.* When reviewing the sufficiency of the evidence, we consider the evidence in the light most favorable to the petitioners. *Id.*

To commit TL under RCW 71.05.280(3), the State had to prove by clear, cogent, and convincing evidence that TL had committed acts constituting second degree assault. Specifically here, the State had to prove that TL had assaulted ML with a deadly weapon. Washington relies on the common law definition of assault, which includes three ways to commit an assault. *State v. Elmi*, 166 Wn.2d 209, 215, 207 P.3d 439 (2009). Here, the jury was instructed on two of the three definitions of assault:

> An assault is an act, with unlawful force, done with intent to inflict bodily injury upon another, tending but failing to accomplish it and accompanied with the apparent present ability to inflict the bodily injury if not prevented. It is not necessary that bodily injury be inflicted.
>
> An assault is also an act, with unlawful force, done with the intent to create in another apprehension and fear of bodily injury, and which in fact creates in another a reasonable apprehension and imminent fear of bodily injury even though the actor did not actually intend to inflict bodily injury.

CP at 102. In a commitment hearing, it is not necessary that the State prove intent, willfulness, or state of mind as an element of the crime. RCW 71.05.280(3).

TL argues that the State produced insufficient evidence that TL's actions created a "reasonable apprehension and imminent fear of bodily injury." Br. of Appellant at 11. But the record does not support TL's contention. When asked how she felt when she saw TL pull out the

No. 58872-2-II

knife, ML testified that she felt "scared" and "shaky." 2 RP at 104. Her immediate reaction was to turn around, rush her and John outside, close the door behind her, and call 911. ML also testified that she was "freaked out and upset" during the incident. 2 RP at 94. Taken in the light most favorable to the State, this testimony is sufficient to establish that ML was placed in apprehension and fear of bodily injury.

Because the evidence, taken in the light most favorable to the petitioners, demonstrates that it is highly probable that ML was placed in apprehension and fear of bodily injury, there was sufficient evidence to support the jury's finding that TL had committed acts constituting second degree assault. Accordingly, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Che, J.

We concur:

Cruser, C.J.

Veljacic, J.